# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CASE NO. 1:08-CR-75-TS |
| | ) |
| JASON LEE SCHULTZ | ) |

## OPINION AND ORDER

Before the Court is the Defendant's Motion to Dismiss Indictment [DE 18], filed on November 12, 2008. The Government filed a Response [DE 19] on November 25, and the Defendant filed his Reply [DE 22] on December 3.

## BACKGROUND

On September 24, 2008, the Defendant was charged by way of an Indictment with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Both counts allege that the Defendant is a convicted felon based on his conviction for "Non-Support of a Dependent Child, a Class D felony, in Whitley County Circuit Court, in cause number 92C01-0409-FD-00166 on February 28, 2006." (Indictment 1, 2, DE 1.) The first count alleges that on or about May 27, 2008, the Defendant in Allen County, Indiana, which is in the Northern District of Indiana, knowingly possessed in and affecting commerce a firearm, specifically a Belknap .20 gauge shotgun, model B-64. The second count alleges that on or about June 16, 2008, the Defendant in Allen County, Indiana, which is in the Northern District of Indiana, knowingly possessed in and affecting commerce a firearm, specifically a Winchester lever action .22 caliber rifle, model 9422, serial number F576726. The Indictment states that the shotgun was manufactured in Massachusetts, and the rifle was made in Connecticut. The Indictment also

includes a forfeiture allegation.

## ANALYSIS

The Defendant makes several arguments in support of dismissing the Indictment. First, he argues that the federal statute criminalizing possession of a firearm by a convicted felon is unconstitutional—both as applied to the Defendant and on its face—in light of *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008). Second, the Defendant attacks the Indictment on Commerce Clause grounds. He argues that, in light of *Heller's* holding, the mere allegation that a firearm was manufactured outside of the state of possession does not confer federal jurisdiction under the Commerce Clause. Third, he argues that the felon in possession statute violates the Defendant's rights under the Equal Protection Clause.

### A.  Defendant's Argument that the Statute is Unconstitutional on its Face and as Applied to the Defendant in Light of *Heller*

The Defendant argues that *Heller* invalidates the felon in possession of a firearm statute, 18 U.S.C. § 922(g)(1), on its face and as applied to the Defendant. The Government disagrees and argues that the statute remains constitutional on its face and as applied to the Defendant.

In *Heller*, the Court considered a challenge under the Second Amendment to the District of Columbia's general ban on the possession of handguns, laws criminalizing the carrying of unregistered firearms, and a law requiring that lawfully owned firearms be unloaded and unassembled or bound by a trigger lock or similar device. 128 S. Ct. at 2788. The Court held that "that the District's ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of

immediate self-defense." *Id.* at 2821–22. The Court based this ruling on its holding that "the Second Amendment conferred an individual right to keep and bear arms." *Id.* at 2799.

However, the Court noted that:

> Like most rights, the right secured by the Second Amendment is not unlimited. . . . [N]othing in our opinion should be taken to cast doubt on *longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.

*Id.* at 2816–17 (emphasis added). The Court noted that "[w]e identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 2817 n.26.

Regardless of other language in the opinion, this language is clear: the Supreme Court in *Heller* was not casting doubt on the constitutional validity of laws banning the possession of firearms by felons. This Court can only follow that clear, unambiguous instruction as it applies to the challenged felon-in-possession statute in this case and conclude that the law is indeed constitutional on its face and as applied to the Defendant.

The Supreme Court's clear instructions make irrelevant the fact (as asserted by the Defendant) that the statute in this case is more restrictive than the laws at issue in *Heller*, or that the Defendant's Class D felony conviction was for a non-violent offense (failure to pay child support), is twenty years old, and resulted in a term of probation. The Supreme Court did not make an exception for certain kinds of felony convictions or certain circumstances. There is no wiggle room to distinguish the present case from the Supreme Court's blanket statement.

The Defendant in his Reply claims that the Supreme Court "has an express disclaimer of any intent to settle all questions that would arise in future cases," (Def. Reply 1), because it

stated "there would be 'time enough to expound upon the historical justifications for the exceptions that we have mentioned if and when those exceptions come before [the Court],'" (*id.*) (quoting *Heller*, 128 S. Ct. at 2821). The Supreme Court did not disclaim an intent to settle all questions that would arise in the future. Quite the contrary, it set out several examples of questions (regarding bans on felons and the mentally ill possessing firearms and laws banning firearms "in sensitive places such as school and government buildings," 128 S. Ct. at 2817), that might arise given its ruling and provided the answer ("nothing . . . should be taken to cast doubt," *id.*, on such laws) to those limited questions. What the Supreme Court left for itself in future cases was to "expound upon the historical justifications," *id.* at 2821, for the limits on the right to keep and bear arms. That the Supreme Court reserved for itself this task does not provide a basis for this Court to rule the challenged gun law unconstitutional, especially, as stated several times, in light of the Supreme Court's explicit statement that such laws are not in "doubt" in light of *Heller*.

The Defendant is unable to point to any post-*Heller* ruling that has declared this statute or a similar one to be unconstitutional. To the contrary, as the Government points out, every court to consider the issue since *Heller* has ruled that the statute is constitutional. (Govt. Resp. 6–7) (collecting cases); *see also United States v. Li*, No. 08-CR-212, 2008 WL 4610318 (E.D. Wis. Oct. 15, 2008) (denying a motion to dismiss indictment on charges of being a felon in possession of a firearm after *Heller*); *United States v. Yancey*, No. 08-CR-103-BBC, 2008 WL 4534201 (W.D. Wis. Oct. 3, 2008) (same); *Reynolds v. Sherrod*, No. 08-CV-506-JPG, 2008 WL 3287042 (S.D. Ill. Aug. 8, 2008) (dismissing as "meritless" a habeas corpus petition that sought to invalidate a conviction for being felon in possession of a firearm in light of *Heller*). Unless and

until the Seventh Circuit or the Supreme Court rules otherwise, this Court is bound to rule that 18 U.S.C. § 922(g)(1) is constitutional on its face and as applied to the Defendant.

**B.      Defendant's Argument that the Mere Allegation that the Firearm was Manufactured Out of State Does Not Confer Federal Jurisdiction**

The Defendant's argument here goes as follows: When the allegation under the statute is only that the firearm traveled in interstate commerce in the past and the Defendant is accused merely of intrastate firearm possession, the statute exceeds the limits of the Commerce Clause and violates the Tenth Amendment, especially in light of *Heller*.

The Government states that the firearms were not manufactured in Indiana, (Govt. Resp. 2), and the Defendant did not contest this. The Defendant stated: "The only nexus with interstate commerce appears to be research on the part of an ATF agent suggesting that the firearms were manufactured outside the state of Indiana." (Def. Mot. to Dismiss 1.) This is not a denial that the firearms were manufactured outside of Indiana. The Defendant further states: "The discovery contains neither information regarding how the firearms came to be present in Indiana, nor any allegation that Mr. Schultz had any involvement with the transport of the firearms to North Carolina." (*Id.*)

For the Commerce Clause challenge, the Defendant relies on *United States v. Lopez*, 514 U.S. 549 (1995), which declared that a federal law criminalizing possession of a firearm in a school zone exceeded Congress's Commerce Clause authority because "[t]he possession of a gun in a local school zone is in no sense an economic activity that might . . . substantially affect any sort of interstate commerce." *Id.* at 567. The Defendant implies that *Lopez* overrules or casts doubt on *United States v. Scarborough*, 431 U.S. 563 (1977), which held that "the interstate

commerce nexus requirement of the possession offense was satisfied by proof that the firearm petitioner possessed had previously traveled in interstate commerce," *id.* at 566. The Defendant cites opinions[1] from other circuits, including concurring or dissenting opinions, in support of the view that *Lopez* makes 18 U.S.C. § 922(g)(1) unconstitutional "where the only interstate commerce nexus is the mere fact that firearms at some point traveled interstate." (Def. Mot. to Dismiss 7.)

The suggestions of opinions in other circuits do not matter in this case because the Seventh Circuit has upheld the felon in possession of a firearm statute on Commerce Clause grounds after *Lopez*, *see, e.g.*, *United States v. Juarez*, 454 F.3d 717, 719 (7th Cir. 2006) (stating that "[w]e have rejected similar challenges . . . concluding that the statute's inclusion of a jurisdictional element insulates it from constitutional attack under the reasoning of *United States v. Lopez*"). So that aspect of the Defendant's argument is foreclosed.

In *Juarez*, the Seventh Circuit noted that in light of a stipulation that the gun was manufactured in Ohio, "[i]t is undisputed that the gun must have traveled in interstate commerce at some point after its manufacture in order for Juarez to possess it in Illinois." 454 F.3d at 719; *see also United States v. Lemons*, 302 F.3d 769, 772 (7th Cir. 2002) (rejecting Commerce Clause challenge when the gun crossed into Wisconsin "at some indeterminate moment in time" before it was discovered in the defendant's possession"). In this case, the Indictment states that the shotgun was made in Massachusetts and the rifle was made in Connecticut. (Indictment 3, DE 1.) The Defendant does not dispute these facts. For the weapons to be found in the possession of the Defendant in Allen County, Indiana, as alleged, they had to have traveled in interstate

---

[1] None of these cases actually declared that the felon-in-possession statute is invalid under the Commerce Clause and *Lopez*.

commerce.

The Defendant does not clearly articulate how *Heller's* holding—that there is an individual right to keep and bear arms[2]—scales back the Commerce Clause authority of 18 U.S.C. § 922(g)(1), other than to say that "the Supreme Court has not addressed the validity of Congress's exercise of its commerce power in the context of the fundamental right to bear arms guaranteed by the Second Amendment." (Def. Mot. to Dismiss 8.) That is true, insofar as the Supreme Court has not considered a Commerce Clause challenge to the statute since deciding *Heller*. But that does not mean, as the Defendant urges, that "the tenuous, commerce-based jurisdiction now endangered by the Supreme Court's Commere Clause jurisprudence must give way." (*Id.*)

There is nothing tenuous about the federal jurisdiction based on the Commerce Clause, which is as alive as ever after *Lopez. See United States v. Raich*, 545 U.S. 1 (2005) (rejecting a Commerce Clause challenge to a federal law criminalizing the home cultivation and intrastate use of marijuana for medical purposes even when authorized by California law). *Raich* made clear that it was consistent with *Lopez*, 545 U.S. at 23–25. In the absence of language in *Heller*[3] or any other controlling case indicating that the individual right to bear arms reduces Commerce

---

[2] The Defendant indicates that *Heller* held that there is a "fundamental right to bear arms guaranteed by the Second Amendment." (Def. Mot. to Dismiss 8.) *Heller* did not state that the individual right to keep and bear arms is a "fundamental" right. The Court used the word "fundamental" twice in its opinion. "By the time of the founding, the right to have arms had become fundamental for English subjects." 128 S. Ct. at 2798. "Blackstone . . . cited the arms provision of the Bill of Rights as one of the fundamental rights of Englishmen." *Id.* Neither of these sentences supports the claim that the *Heller* Court found a fundamental right to bear arms, especially because the Court did not use that word in its holding or conclusion.

[3] Not only does the *Heller* opinion give no hint that it chips away at federal jurisdiction under the Commerce Clause, but it states, as already mentioned, that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . or laws imposing conditions and qualifications on the commercial sale of arms." 128 S. Ct. at 2816–17. This language expressly seeks to preserve federal jurisdiction based on the Commerce Clause.

Clause federal jurisdiction, there is no basis for this Court to so rule.

The Defendant does not provide much elaboration for his Tenth Amendment argument, except to say that it is "implicated by overly broad assertions of federal jurisdiction." (Def. Mot. to Dismiss 7.) The Seventh Circuit has upheld 18 U.S.C. § 922(g) against a Tenth Amendment challenge. *United States v. Hemmings*, 258 F.3d 587, 594 (7th Cir. 2001); *see also Gillespie v. City of Indianapolis*, 185 F.3d 693, 706–08 (7th Cir. 1999) (ruling that 18 U.S.C. § 922(g)(9), which prohibits persons convicted of a misdemeanor crime of domestic violence from possessing a firearm, does not violate the Tenth Amendment). The Defendant does not explain how *Heller's* holding changes the Tenth Amendment implications of the statute. Without any argument based on controlling legal authority to the contrary, this Court is bound to rule that the statute does not violate the Tenth Amendment.

## C. Defendant's Argument that the Statute Violates the Equal Protection Clause

The Defendant argues that the felon in possession statute violates the Defendant's rights under the Equal Protection Clause because the statute has "no uniform definition of the conduct that will result in a loss of the right to possess firearms under federal law, instead relying on diverse state definitions" of felony crimes. (Def. Mot. to Dismiss 9.) The Defendant urges the Court to apply strict scrutiny to invalidate the law, but also argues that the statute does not even meet the rational basis test. (*Id.* at 10.)

The Defendant argues that *Lewis v. United States*, 445 U.S. 55 (1980), which upheld a predecessor felon in possession law, cannot be the basis for ruling that the current statute is constitutional in light of *Heller's* purported recognition of "the fundamental, individual right to

8

bear arms." (Def. Mot. 10.) However, as mentioned earlier, *Heller* did not declare that this right is fundamental, so this cannot be a basis for this Court to declare the present statute unconstitutional. *See United States v. Bernal*, No. L-08-321, 2008 WL 2078164, at *5 (S.D. Tex. May 15, 2008) (relying on *Lewis* to reject an equal protection challenge to the statute after *Heller*).

The Government is correct that the Supreme Court used the rational basis standard to uphold a predecessor felon in possession statute against a Due Process claim in *Lewis*, and that *Heller* did not explicitly adopt a level of scrutiny for Second Amendment challenges. But the Court reads footnote twenty-seven in *Heller* as requiring a tougher standard of review than the rational basis standard. "Obviously, the [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee against double jeopardy, the right to counsel, or *the right to keep and bear arms*." 129 S. Ct. at 2817, n.27 (emphasis added). The Court then noted that application of the rational basis test to the right to keep and bear arms would mean that the Second Amendment "would have no effect." *Id.* On the other hand, because the Supreme Court did not state the there is a fundamental right to keep and bear arms, strict scrutiny does not apply. That leaves intermediate scrutiny. *See United States v. Bledsoe*, No. SA-08-CR-13(2)-XR, 2008 WL 3538717, at *4 (W.D. Tex. Aug. 8, 2008) (applying intermediate scrutiny to a *Heller*-based equal protection challenge). "To withstand intermediate scrutiny, a statutory classification must be substantially related to an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988) (quoted in *Bledsoe*, 2008 WL 3538717, at *4).

Public safety is an important governmental objective. *Cf. United States v. Salerno*, 481

9

U.S. 739, 750, 754 (1987) (stating that preventing crime is a compelling interest); *Doe v. City of Lafayette, Ind.*, 377 F.3d 757 (7th Cir. 2004) (upholding ban on convicted sex offender being present in parks because of a non-punitive governmental objective of keeping children safe) (collecting cases with similar holdings); *Rapier v. Harris*, 172 F.3d 999, 1004 (7th Cir. 1999) (stating that maintaining order and discipline in a detention facility is an important governmental objective). Persons who have committed felonies are more likely to commit crimes than those who have not.[4] Efforts to keep firearms out of the hands of crime-prone felons, such as the challenged statute in this case, deter crime and result in the arrest, conviction, and imprisonment of offenders.[5] *See* 18 U.S.C. § 3553(a)(2)(A)–(C) (a sentence of imprisonment should "promote respect for the law," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant"). Therefore, there is a substantial governmental interest in keeping firearms out of the hands of crime-prone felons. A federal law doing so, such as the current statute, substantially relates to that important governmental objective of public safety.[6] As a result, the Court finds that the felon in possession of a firearm statute, 18 U.S.C.

---

[4] *Compare* Bureau of Justice Statistics, Department of Justice, NJC 193427, Recidivism of Prisoners Release in 1994 (June 2002), http://www.ojp.usdoj.gov/bjs/pub/pdf/rpr94.pdf, (finding that more than two-thirds of about 300,000 prisoners released in 15 states in 1994 were rearrested in three years) *with* Bureau of Justice Statistics, Department of Justice, NJC 197976, Prevalence of Imprisonment in the U.S. Population, 1974–2001 (August 2003), http://www.ojp.usdoj.gov/bjs/pub/pdf/piusp01.pdf (finding that an estimated one of every fifteen persons, or 6.6%, will serve time in a prison during their lifetime).

[5] *E.g.*, BJS's Federal Justice Statistics Program, Department of Justice, http://fjsrc.urban.org (table created Dec. 17, 2008) (showing that for the cases that were closed in fiscal year 2006, 5078 defendants were convicted under 18 U.S.C. § 992(g)).

[6] The Defendant argues in his Reply that not all felons are violent, the crime of being a felon in possession of a firearm is not a crime of violence *per se*, and that "[t]here is no empirical data suggesting that persons convicted of non-violent felonies . . . are more likely to seek guns or use them than other, non-convicted persons." (Def. Reply 2.) Without a factual basis for these statements, the Court is not persuaded that these factual assertions are correct. But even assuming these are true for the moment, the Court finds that the challenged statute still substantially relates to the important governmental objective of public safety.

§ 922(g)(1), is not unconstitutional under the Equal Protection Clause. *See United States v. Irish*, 285 F. App'x 326 (8th Cir. 2008) (rejecting a *Heller*-based Equal Protection Clause challenge to the statute without stating what level of scrutiny the court employed); *Bledsoe*, 2008 WL 3538717 (same but using intermediate scrutiny), at *4; *Bernal*, 2008 WL 2078164, at *5 (same but using the rational basis test).

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss Indictment [DE 18] is DENIED. The Ruling Conference for Monday, January 5, 2009, at 3 p.m. is REAFFIRMED. The Court will initiate the call.

So ORDERED on January 5, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT